**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

GENE ALAN JAMES,                     )
                                                           )
            Plaintiff,          )
                                                           )
v.                                            )  Case No. CIV-17-148-RAW-KEW
                                                           )
COMMISSIONER OF THE SOCIAL    )
SECURITY ADMINISTRATION,       )
                                                           )
            Defendant.         )

**REPORT AND RECOMMENDATION**

Plaintiff Gene Alan James (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. Claimant completed his high school education.  Claimant has worked in the past as an oil field mechanic and oil field representative. Claimant alleges an inability to work beginning February 2, 2012 due to limitations resulting from back, neck, leg, foot, and knee pain, obesity, hypertension, fatigue, panic/anxiety disorder with intermittent explosive disorder, and post traumatic stress syndrome ("PTSD").

**Procedural History**

On May 22, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On May 28, 2015 and on December 16, 2015, Administrative Law Judge ("ALJ") John Belcher conducted an administrative hearing by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding from Tulsa, Oklahoma. On January 13, 2016, the ALJ issued an unfavorable decision.  On March 27, 2017, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to reach a proper RFC determination; and (2) failing to pose proper

4

hypothetical questions to the vocational expert at step five.

### RFC Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, lumbar spine problems, mild arthritis in his bilateral knees, bilateral carpal tunnel syndrome, depression, anxiety, and intermittent explosive disorder. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, the ALJ determined Claimant could lift, carry, push, and pull up to ten pounds frequently and 20 pounds occasionally. He could stand/walk for two to four hours in an eight hour workday with normal breaks and sit for six to eight hours in an eight hour workday with normal breaks. Claimant could frequently climb stairs and ramps, balance, bend, stoop, kneel, crouch, and crawl. Claimant cannot climb ladders, ropes, and scaffolding. The ALJ determined Claimant could occasionally reach overhead with his bilateral arms and frequently finger, handle, and feel with his bilateral hands. He could frequently use his bilateral feet to use foot controls. He should avoid exposure to extreme cold, extreme vibration, hazardous or fast-paced machinery and unprotected heights. Claimant should avoid loud or high-pitched background noise. He was limited to simple and routine and some complex tasks allowing for some semi-skilled work. Claimant would be limited to

superficial contact with co-workers and supervisors with not more than ten co-workers at a time and no contact with the public. (Tr. 18).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of small product assembler, electronic assembler, and plastic product assembler. (Tr. 27-28). As a result, the ALJ found Claimant was not under a disability from February 2, 2012 through the date of the decision. (Tr. 28).

In a first sub-issue, Claimant contends the ALJ erred at step two by failing to find his cervical spine problems as a severe impairment.[2] Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also

---

[2] Counsel references the record utilizing the electronically filed transcript part and page notation. In many instances, the reference is simply in error, causing undue delay in finding the documents referenced in Claimant's brief. In the future, counsel should reference the Bates numbering in the transcript when directing the Court to evidence in the record.

severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"  Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28.  At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).   An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(1)(D).  The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The ALJ first noted that Claimant's representative failed to

provide further documentation of the cervical condition as promised in the hearing. (Tr. 13, 64-65). Since the burden lies with the claimant at step two, the failure to provide evidence of the effect of this condition during the relevant, more recent time period would work against Claimant. The ALJ referenced the cervical condition throughout the decision. (Tr. 19-20, 26). He concluded, however, that the condition did not impose limitations as alleged by Claimant in his subjective complaints. (Tr. 26). Indeed, Dr. Subramaniam Krishnamurthi found upon examination that Claimant's flexion, extension, lateral flexion, and rotation of his cervical spine were within normal limits. (Tr. 629). This Court finds no error in the ALJ's step two analysis with regard to Claimant's cervical spine.

Claimant next challenges the ALJ's RFC findings, contending that his walking with a limp, use of a cane, weakness in his legs, inability to perform heel/toe walking, limited and painful range of motion in his lower back, and tenderness and muscle spasms in the lower back required more restrictive functional limitations than those imposed by the ALJ in the RFC. The ALJ cited to several sources in his decision which supported the level of restriction found in his RFC. Dr. Anthony E. Francis testified at the hearing. He opined an RFC which substantially coincided with the

restrictions determined by the ALJ. (Tr. 18, 56-57). Similarly, the reviewing consultants, Dr. Kavitha Reddy and Dr. Myron Watkins, reached RFCs which were less restrictive than the ALJ's findings. (Tr. 122-23, 142-43). Additionally, Dr. Krishnamurthi determined that while Claimant used a cane, he was able to walk without it. He walked with a limp on the right leg but his gait was stable with very slow speed. Heel walking and toe walking were difficult. He had difficulty sitting on the examination table due to pain. (Tr. 629).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record

were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). While Claimant undoubtedly demonstrated limitations in the use of his legs, the ALJ's RFC assessment and attendant restrictions in mobility was supported by substantial evidence.

Claimant also contends his carpal tunnel syndrome caused manipulative restrictions which the ALJ did not include in the RFC. The record contains a single finding of bilateral carpal tunnel syndromes. (Tr. 650). The functional findings of numerous sources, however, indicate no limitation in manipulative functioning. (Tr. 123, 142, 568, 629, 633). One note even shows Claimant is a good guitar player. (Tr. 581). Further manipulative restrictions are not warranted by the record.

Claimant asserts the ALJ should have included additional mental restrictions in the RFC. Claimant has been diagnosed with generalized anxiety disorder. (Tr. 717). He is irritable and does not cope well with pressure. (Tr. 664). On August 3, 2015, Dr. Larry Vaught completed a medical source statement on Claimant's mental status. He concluded Claimant was markedly limited in the areas of interacting appropriately with the public and supervisors.

Id. On July 23, 2013, Dr. Theresa Horton completed a mental status examination of Claimant. She diagnosed Claimant with Impulse Control Disorder, NOS, Dysthymia, early onset, and Personality Disorder, NOS (primary). (Tr. 596). In her narrative statement, Dr. Horton wrote

> Mr. James is likely able to understand, remember and manage most simple and complex instructions and tasks, consistent with employment in the past. He likely does poorly interacting and working with others, though has had long term employment historically as well as a marriage of 20 years. He has current complaints of chronic pain that will be addressed in his physician's reports.

(Tr. 597).

The ALJ addressed the vast majority of the concerns of each of these mental health professional. He limited Claimant to simple and routine tasks with some complex tasks allowed for some semi-skilled work. He also limited Claimant to superficial contact with co-workers and supervisors with contact of not more than ten co-workers at a time and no contact with the public. (Tr. 18). The ALJ's findings were supported by the medical record, including the reviewing mental heal professionals. (Tr. 124-25, 143-45).

Claimant next contends the ALJ failed to properly evaluate the medical opinions in the record. Dr. Don Chambers completed a mental RFC form. He indicated Claimant was markedly limited in the areas of relating to co-workers, interacting with supervisors, dealing

11

with work stresses, adjusting to the introduction of new and unfamiliar personnel, behaving in an emotionally stable manner, interacting with the general public, accepting instructions and appropriately responding to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and working in coordination or proximity to others without being distracted by them. (Tr. 623-25). The ALJ gave the opinion little to no weight because he used a hybrid form supplied by Claimant's representative instead of the SSA form. More importantly, the ALJ found the opinion to be internally inconsistent on the ability to understand and remember instructions. No medical evidence supported the extreme findings of limitation – certainly none of the other opinions in the record on Claimant's mental limitations. (Tr. 20). Internal inconsistency and the lack of support in the medical record are legitimate bases for rejecting the opinions of a treating physician. *See* Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007); Castelleno v. Sec. of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ was within his province to reject the opinion of Dr. Chambers in light of this record.

Similarly, Claimant asserts the ALJ discounted the opinion of Dr. Steven P. Medeiros reflected in a mental functional assessment questionnaire dated June 5, 2013. He diagnosed Claimant with PTSD

and major depression. He concluded that "physical limitations that prevent normal employment" and "mental limitations that restrict many 'light duty' jobs." (Tr. 600). The ALJ also gave this opinion little to no weight because his opinion was not consistent with his treatment notes. He had diagnosed Claimant with generalized anxiety and PTSD, not depression. He also provided no detail for his conclusions including supporting evidence. The ALJ noted that the treatment notes were completed by a nurse practitioner and not Dr. Medeiros. (Tr. 21). The sparse and unsupported nature of Dr. Medeiros' opinion justified the ALJ's reduction in weight. Again, the inconsistency in the report and treatment notes creates a basis for rejection.

Claimant next challenges the ALJ's findings with regard to counselor, Debbie Decker. She stated that she did not believe Claimant could work or get along with others. (Tr. 531). Ms. Decker is non-acceptable medical source. The ALJ considered this testimony as such and found it was not supported by clinical notes and were based upon self-reported problems by Claimant. (Tr. 22). His discounting of the testimony is supported. <u>Keyes-Zachary v. Astrue</u>, 695 F.3d 1156, 1163 (10th Cir. 2012).

Claimant contends the ALJ should have adopted all of the findings of Dr. Vaught and Dr. Krishnamurthi. The ALJ provided

13

legitimate and supported bases for rejecting portions of the opinions. Moreover, the ALJ adopted the vast majority of the findings of Dr. Vaught in his RFC. (Tr. 23-25). This Court finds no foundation for rejecting the ALJ's findings with regard to these sources.

## Step Five Analysis

Claimant contends the ALJ failed to include all of his limitations in the hypothetical questions posed to the vocational expert. The questioning reflected the ALJ's RFC limitations. Since this Court has not found the RFC was erroneous, the hypothetical questioning was appropriate.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE